**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO.** 3:14-CV-584

| | | |
|---|---|---|
| SYBRENNA V. HICKLIN-JONES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**BEFORE THE COURT** are cross-motions for summary judgment filed by the parties. Sybrenna W. Hicklin-Jones ("Hicklin-Jones") filed a Motion for Summary Judgment (Doc. 11) and accompanying memorandum on February 20, 2015. (Docs. 11-12). The Commissioner filed a Motion for Summary Judgment and accompanying memorandum on May 20, 2015. (Docs. 16-17). Thereafter, Plaintiff filed a Supplemental Memorandum (Doc. 19) to which the Commissioner responded, (Doc. 20). For the following reasons, this Court will **DENY** Plaintiff's Motion, **GRANT** the Commissioner's Motion, and **AFFIRM** the Commissioner's determination.

**I.     STANDARD OF REVIEW**

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996) (quoting *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966)) (internal quotation marks and citation omitted). "In reviewing for substantial evidence, [a court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (quoting *Craig*, 76 F.3d at 589)).

## II.   ADMINISTRATIVE HISTORY

On April 28, 2011, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. On May 5, 2011, she filed a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability beginning on January 1, 2011. These claims were denied initially and upon reconsideration. Plaintiff received a hearing on October 25, 2011, where she appeared *pro se* before Administrative Law Judge ("ALJ") Frank D. Armstrong.

The ALJ found that Plaintiff had the following severe impairments: mild chronic obstructive pulmonary disease ("COPD") with a history of tobacco use (in remission), history of fibromyalgia and rheumatoid arthritis, and depression with anxiety. (Tr. 24). The ALJ noted that Hicklin-Jones testified about a recent diagnosis of carpal tunnel syndrome, but found that there was no objective evidence to substantiate the diagnosis. (Tr. 25).

The ALJ also found that Plaintiff did not meet the Listings. However, the ALJ did find that Plaintiff had mild restrictions in activities of daily living and social functioning. (*Id.*). The ALJ found that Plaintiff had moderate restrictions in concentration, persistence, and pace. (*Id.*).

The ALJ found that Hicklin-Jones had the RFC to perform medium work: she is able to lift and carry fifty pounds occasionally and twenty pounds frequently. She is able to stand and walk for six hours and sit for two hours in an eight-hour workday. The ALJ found that Hicklin-Jones could work for two hour segments with ten to fifteen minute breaks. The ALJ also limited her to simple, routine, repetitive tasks with some more complex tasks in a low stress environment. (Tr. 26).

The ALJ then found that Hicklin-Jones could not perform past relevant work. (Tr. 29). However, the ALJ found, with the assistance of a VE, that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 29).

Thereafter, Plaintiff hired her current attorney and requested review of the adverse decision to the Appeals Council. Plaintiff submitted additional evidence in the form of records from Dr. Murphy, Dr. Bravver, Dr. McGlynn, and Dr. Greene. (Tr. 5). The Appeals Council made this additional evidence part of the record. (*Id.*). The Appeals Council denied the request for review, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 2).

## III.    ANALYSIS

Plaintiff contends that remand is required because (1) the ALJ failed to include pulmonary, breathing, or environmental limitations into his hypothetical question to the VE; (2) that the ALJ did not appropriately account for Plaintiff's mental limitations in the RFC; (3) that the new evidence submitted to the Appeals Council fills evidentiary gaps and thus needs to be resolved by the ALJ; and (4) the ALJ made a deficient credibility finding against Plaintiff. The Court will address these contentions in turn.

## A.    HYPOTHETICAL QUESTION

At step five, the Commissioner has the burden to show that work exists in the national economy that the Plaintiff can perform.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  The ALJ can meet this burden by properly relying on the testimony of a VE. *Baldwin v. Barnhardt*, 444 F. Supp. 2d 457, 463 (E.D.N.C. 2005); 20 C.F.R. § 404.1566(e), § 416.966(e).  "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  Therefore, for a VE's testimony "to be relevant or helpful, it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of a claimant's impairments." *Id.*  The Fourth Circuit has stated that "for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.*

The ALJ gave the following hypotheticals to the VE:

> Q  Okay. All right. I want to give you a hypothetical and ask you some questions with regard to the hypothetical. I want you to assume a 45-year-old individual with one year of college. Assume further that the individual has respiratory problems, difficulty breathing,
>
> shortness of breath. She has degenerative joint disease in her hips. She has -- she has had tobacco abuse which is now in remission. She also has, has a history of acute bladder problems and, and also some non-cardiac chest pain. As a result of these -- these problems, I

```
would find the individual would be limited to lifting, carrying,
pushing, pulling no more than 50 pounds occasionally, 25 pounds
frequently. And as far as her -- I would also further advance a mental
status exam. I would find that her daily activities, she has mild
limitations. Her social functioning and her -- well, I'd say social
functioning and daily activities would be mild. Her concentration,
persistence, and pace would be moderately limited because of the pain
and because of perhaps some mild depression which has not been
diagnosed. And as a result of that, I would find that she would be
limited to simple, routine, repetitive tasks and some more -- more
complex tasks that did not require a lot of stress or supervision. She
-- she would be able to work for up to two hour -- in two hour
segments that she would need to rest after two hours to either rest
physically and emotionally. She -- so, she would be able to work an
eight hour day or a 40 hour week. She can drive, she can use public
transportation, she can make work-related decisions and can adjust to
routine-type work changes. Now, with those -- with those limitations,
would the hypothetical Claimant be able to do any of the jobs that
were identified as Ms. Hicklin-Jones has worked?
```

(Tr. 71-72). When asked if there would be jobs that could accommodate these limitations, the

VE responded that a person with these limitations could work as an industrial cleaner, small parts

assembler, or a mail clerk. (Tr. 73).

The ALJ, as Plaintiff asserts, did not include limitations related to COPD in his

hypothetical question to the VE, despite finding that COPD qualified as a severe impairment,

(Tr. 24). In the RFC portion of his opinion, the ALJ stated that Plaintiff reported that she had

difficulty breathing due to COPD. (Tr. 27). However, the ALJ also found that the objective

evidence was inconsistent with her allegations. (*Id.*). In particular, the ALJ stated that she was

diagnosed with COPD in October of 2011 and recounted medical records that stated that she had

no significant wheezing and was never in respiratory distress. (Tr. 27-28); (Tr. 956-57). Recent

treatment notes indicate the following:

- On November 15, 2011, Plaintiff indicated that her breathing had improved some
  medication and that she was having less wheezing. (Tr. 1482).

- On November 29, 2011, Plaintiff's medication was decreased; she was advised that it was critical to quit smoking; and it was reported that "[s]he is not having any obvious wheezing." (Tr. 1481).
- On December 29, 2011, her doctor tapered her off of certain medications for her COPD but advised her to continue using her inhalers. He indicated that her bronchitis symptoms were stable, that she had no further acute attacks, and that she had quit smoking for at least three to four days. (Tr. 1479).
- On January 21, 2012, Plaintiff was diagnosed with atypical pneumonia with shortness of breath secondary. (Tr. 956); *see also* (Tr. 959, indicating dyspnea; Tr. 960, indicating 98% oxygen saturation)
- On January 25, 2012, it was recommended that Plaintiff have a pulmonary follow up to help determine the cause of her shortness of breath. (Tr. 981-83).
- On February 3, 2012, Plaintiff indicated that she was doing "fairly well" but that when dust was stirred up her symptoms were aggravated. Her doctor indicated that she was attempting to see a pulmonary specialist but that her insurance did not cover it. (Tr. 1477).
- On March 5, 2012, her provider indicated that she was doing fairly well from a pulmonary standpoint, but that she still had an occasional cough, particularly when the fan blows. (Tr. 1475).
- On May 29, 2012, her provider indicated that "[h]er breathing is doing somewhat better than when she was smoking. She still gets short of breath with exertion. Still ha[s] occasional cough." (Tr. 1473).
- On August 27, 2012, her provider noted that her breathing was "stable" and that she had not had any attacks for some time. He also indicated that she had not smoked for almost a year. (Tr. 1471).
- On October 9, 2012, her doctor indicated that her COPD was "about the same" and that she uses inhalers on a daily basis. The record indicated that the inhalers "seem to be effective for her." (Tr. 1469).
- On November 6, 2012, Plaintiff was wheezing. (Tr. 1465).
- On January 7, 2013, Plaintiff's cough was better, although she was wheezing at nighttime and maintained a dry cough. She was also assessed with acute bronchitis. (Tr. 1463).

The Commissioner argues that there is no credible medical evidence in the record that supports an environmental restriction in her RFC. (Doc. 17, at 6). The Court does not believe the record is so one-sided but does note that the record substantiates a conclusion that her condition has improved due to her cessation of smoking in combination with treatment. Regardless, the Court finds that any error is harmless given the particular jobs identified by the VE.

The industrial cleaner job would be inappropriate for someone with environmental restrictions given the exposure to lint and dust. *See* (Doc. 12-1, at 1, DOT 381.687-018). The small parts assembler job entails performing any combination of repetitive tasks on an assembly line to mass produce small products. The mail clerk job entails sorting mail, dispatching outgoing mail, and opening mail. Both of the latter two jobs require no exposure to atmospheric conditions, wet or humid conditions, or any other environmental condition. *See* Dictionary of Occupational Titles ("DOT") 706.684-022, Assembler, Small Products I, 1991 WL 679050; DOT 209.687-026, Mail Clerk, 1991 WL 671813. Regarding the small parts assembler job, the VE testified that there are an estimated 6,800 jobs in North Carolina and 87,000 in the United States. (Tr. 73). Regarding the mail clerk job, the VE estimated that there are 1,300 jobs in North Carolina and 70,000 in the United States. Accordingly, this Court finds that there is sufficient evidence in the record to support the ALJ's conclusion that there are sufficient jobs that Plaintiff can perform, even with consideration of an additional environmental restriction.

### B.    SSR 96-8

Plaintiff next argues that the ALJ failed to comply with the strictures of SSR 96-8 in connection with her mental impairments. The required "special technique" for evaluating mental impairments is set forth in 20 C.F.R. §§ 404.1420a, 416.920a. The ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must "then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. *Id.* §§ 404.1520a(b)(2), 404.1520a(c), 416.920a(b)(2), 416.920a(c). These areas are (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). SSR 96-8

requires that the ALJ's narrative discuss a claimant's ability to perform sustained work activities on a regular and continuing basis, as well as the maximum amount of each activity the claimant can perform based on the evidence in the record. Regarding mental limitations, which relate to nonexertional capacity, the ALJ must express these limitations in terms of work-related functions.

### 1. The RFC Appropriately Accounted for the Limitations in Concentration, Persistence, and Pace

In *Mascio*, the Fourth Circuit held that an ALJ's hypothetical to a vocational expert, which limited the plaintiff to unskilled work but said nothing about the claimant's mental impairments, was legally insufficient because it failed to properly account for the claimant's moderate limitations in concentration, persistence, or pace. 780 F.3d at 633. The Fourth Circuit stated that an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). The court noted that "the ability to perform simple tasks is different from the ability to stay on task," and thus merely limiting the hypothetical to simple or unskilled work was insufficient. *Id.* at 638. Remand, however, is not automatically required when an ALJ fails to explicitly account for concentration, persistence, or pace limitations in his or her hypothetical to the VE. *See id.* For instance, "the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.*

In *Mascio*, remand was necessary because the ALJ provided no explanation at all regarding whether the claimant's limitations in concentration, persistence, or pace affected her RFC. *Id.* Here, *Mascio* does not require remand. The ALJ's RFC limited Plaintiff as follows: "[t]he claimant can work for two hours segments with ten to fifteen minute breaks. The claimant is able

to perform simple, routine, repetitive tasks and some more complex tasks in a low stress environment." (Tr. 26).

The ALJ cited the following information to support this RFC: (1) The consultative examiner "noted that the claimant was able to understand, retain, and follow instructions, and sustain attention to tasks," (Tr. 28); (2) in Plaintiff's November 2012 psychiatric evaluation, Plaintiff "showed good attention and concentration," (Tr. 28); and (3) the ALJ gave great weight to Daniel Nelson, Psy. D., who stated that Plaintiff could sustain attention to simple tasks for two hours at a time in a non-production setting, (Tr. 28, citing Tr. 115-117).

Unlike *Mascio*, Plaintiff is not merely limited to simple or unskilled work. Rather, the ALJ's limitation regarding work length and breaks is directly responsive to her allegations regarding her ability to stay on task and is amply supported by the record evidence.

## 2.    Function-by-Function Analysis

Plaintiff argues that the ALJ failed to perform a function-by-function analysis of her nonexertional capacity. In particular, Plaintiff argues that (1) the ALJ did not address whether Plaintiff got along well with co-workers or supervisors; and (2) a purported conflict between Dr. Hamlin and Nelson's step two findings.

The ALJ is solely responsible for determining the RFC of the claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96–8p. Completing this assessment requires that the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *See* SSR 96–8p. The ALJ is required to consider both severe and non-severe impairments in the RFC assessment. *Id.* "The RFC

assessment must include a narrative discussion describing how the evidence supports the medical facts (e.g., laboratory findings) and nonmedical evidence (e .g., daily activities, observations) ... In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work related activity the individual can perform based on the evidence available in the case record." S.S.R. 96–8p at *7.

In *Mascio*, the Fourth Circuit rejected a *per se* rule that would require remand when an ALJ did not perform an explicit function-by-function analysis. *Id.* at 636. However, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or whether other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 635 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). In *Mascio*, the ALJ concluded that the claimant could perform certain functions, but "said nothing about [her] ability to perform them for a full workday." *Id.* at 637. This was especially problematic because the "record contain[ed] conflicting evidence" as to RFC that the ALJ did not address. *Id.* Specifically, the record had two RFC assessments which conflicted with each other. *Id.* One stated that the claimant could lift fifty pounds, but the other limited her to twenty. *Id.* The ALJ's findings were more consistent with the assessment that he did not discuss at all. *Id.* Regarding the other assessment, the ALJ left a trailing sentence where he forgot to state the weight he was giving the opinion. *See id.* Given these problems, the Court of Appeals remanded because a reviewing court was "left to guess about how the ALJ arrived at his conclusions" and "remain[ed] uncertain as to what the ALJ intended." *Id.*

In particular, Plaintiff argues that "[t]he ALJ found Hicklin-Jones has difficulties in social functioning but did not address her ability to respond appropriately to supervision or co-workers." (Doc. 12, at 13). However, the ALJ specifically recounted the consultative examiner's finding that Plaintiff "did not report difficulty getting along with others in a work setting. She said she tended to handle stress somewhat better at work than in her personal life." (Tr. 28). The consultative examiner report cited reads that Plaintiff "got along well with coworkers and supervisors." (Tr. 668). Accordingly, this argument will not provide a basis for remand.

Plaintiff also argues that there are material inconsistencies in the record that the ALJ failed to address. Specifically, Plaintiff notes that at the initial level the psychological medical consultant, Dr. Hamlin, opined that she did not have a severe mental impairment; but at the reconsideration level the medical consultant found severe mental impairments. (Doc. 19, at 2). The Court finds this argument meritless. The ALJ found that Plaintiff had severe mental impairments and any purported error was harmless because it inured to her benefit.

Next, Plaintiff argues that there is a conflict between the medical consultant at the reconsideration level and Plaintiff's RFC. In particular, Dr. Daniel Nelson found that Plaintiff had moderate impairments in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (Tr. 128). Dr. Hamlin found only mild restrictions in each area. (Tr. 97). He gave each of these opinion's "significant weight." (Tr. 28). "[A]ssigning a medical opinion "significant weight," does not require the ALJ to adopt all of a physician's findings." *Geisler v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-14-2857, 2015 WL 4485459, at *2 (D. Md. July 21, 2015).

The ALJ only found mild restrictions in activities of daily living and social functioning, but found moderate restrictions in concentration, persistence, and pace. (Tr. 25-26).

First, the Court is able to review meaningfully the ALJ's decision regarding the mild restrictions in activities of daily living and social functioning because he recounted substantial record support for his opinion. The ALJ stated that Plaintiff could: drive, do housework with assistance from her adult daughter, supervise and care for her mentally impaired daughter, complete personal care tasks independently, prepare meals, use the internet, play games, attend church multiple times a week, manage her finances, and shop. (Tr. 25). The ALJ's narrative provides ample insight into his decisional process and the Court is not frustrated in conducting its review.

Secondly the Court notes that the ALJ cited extensively from the medical record in discussing Plaintiff's alleged mental impairments in the RFC portion of the opinion as well. In analyzing the medical record, he discussed her allegations of anxiety; her short and long-term memory; ability to perform calculations and follow instructions; her ability to concentrate; and her mood. *See* (Tr. 28). The Court is not left to guess at how the ALJ arrived at his conclusions. Any failure to credit Dr. Nelson's findings at step two is harmless because the record supports the ALJ's RFC. *See Ashby v. Colvin*, No. CIV.A. 2:14-674, 2015 WL 1481625, at *9 (S.D. W. Va. Mar. 31, 2015) (collecting cases stating that error at step two was harmless when ALJ appropriately considering limiting effects of mental impairments in the RFC analysis).

Accordingly, the Court will not remand due to Plaintiff's argument that the ALJ failed to perform a function-by-function analysis.

### 3. Stress

"Speaking directly to stress and mental illness, SSR 85–15 notes the difficulty associated with evaluating a mentally impaired claimant's ability to adapt to the demands or stress of the workplace." *Culbreath v. Colvin*, No. 5:11CV89-RLV, 2014 WL 2882808, at *3 (W.D.N.C. June

25, 2014) (Voorhees, J.). "Moreover, the need for 'thoroughness in evaluation on an individualized basis" at Step Five is also expressly required.'" *Id.* (quoting SSR 85-15). "An ALJ must evaluate stress in terms of its effect on the claimant's ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and customary work situations; and deal with changes in a routine work setting." *Grubby v. Astrue*, No. 1:09CV364, 2010 WL 5553677, at *14 (W.D.N.C. Nov. 18, 2010) *adopted,* No. 1:09CV364, 2011 WL 52865 (W.D.N.C. Jan. 7, 2011).

Plaintiff argues that the failure to define "low stress environment" in the RFC or the hypothetical to the VE requires remand. However, the ALJ did perform an individualized analysis by including the following in his hypothetical: she can make work-related decisions; she can adjust to routine-type work changes; she requires breaks after two hours; she can perform simple, routine, and repetitive tasks, and some complex tasks that do not require a lot of stress or supervision. The phrase "a lot of stress" is modified by the preceding limitations and was crafted in response to the mental impairment evidence of record. Accordingly, there is no cause for remand because of a failure to follow SSR 85-15. *See Davis v. Colvin*, No. CA 9:12-2244-CMC-BM, 2014 WL 172513, at *4 (D.S.C. Jan. 15, 2014) (although low stress not included in RFC, claimant was limited to simple, routine work); *Epperson v. Astrue*, No. 2:11-CV-12-D, 2012 WL 3862717, at *4 (E.D.N.C. Sept. 5, 2012) (ALJ basing "low stress work" on physician's findings satisfied SSR 85-15 even though claimant argued it was vague).

### C.    New Evidence

This is a case where new evidence has been specifically incorporated into the record by the Appeals Council. Accordingly, this new evidence is part of the record on appeal. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). The Court notes that the Appeals Council did not

explain the basis for its decision; however, it is not required to do so. *Id.* at 702. Certainly "an express analysis of the Appeal's Council's determination would [be] helpful for purposes of judicial review." *Id.* at 706 (quoting *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2007)). However, judicial review is still possible "as long as the record provides 'an adequate explanation of [the Commissioner's] decision.'" *Id.* (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)). For new evidence to require remand, it must be material. *Id.* at 705. Evidence is material if "there is a 'reasonable possibility that the new evidence would have changed the outcome.'" *Id.* Here, the Commissioner concedes that the evidence is new but argues that it is not material. When a court "cannot determine, from review of the record as a whole, if substantial evidence supports the denial of benefits" it must reverse and remand. *Id.* at 702.

In *Meyer*, the ALJ denied the disability claim and stated that the claimant had failed to provide an opinion from his treating physician. *Id.* at 703. The claimant then submitted a letter from his treating physician to the Appeals Council. *Id.* at 703-04. However, the Appeals Council did not change the ALJ's decision. *Id.* The Fourth Circuit held that remand was appropriate because the ALJ's decision suggested that an "evidentiary gap played a role in its decision." *Id.* The Fourth Circuit stated that the record was not "one-sided" and that evidence submitted needed to be reconciled by the ALJ because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Id.* Relevant to the instant issue is that the ALJ found that "[t]he objective evidence is consistent with the [RFC] and inconsistent with the claimant's allegation of disability." (Tr. 27). Also relevant is the following excerpt: "None of the claimant's physicians indicated that the claimant has any functional limitations due to her physical or mental impairments. In the absence of the same, the

undersigned has given significant weight to the State agency medical and psychological consultants' assessments." (Tr. 28).

District courts have refused to remand cases where a claimant submits a letter or opinion from a doctor to the Appeals Council that purportedly supports a finding of disability when it is contradicted by the doctor's records. *See Rowland v. Colvin*, No. 4:13-CV-00007, 2014 WL 2215884, at *16 (W.D. Va. May 29, 2014). Such evidence, at times, is not material because an opinion that is at odds with its foundation – the medical records of the provider – cannot provide a reasonable possibility of a different outcome.

This Court, on August 20, 2015, issued an opinion addressing *Meyer* in a similar context – with Plaintiff's counsel remaining the same. There, as in here, the claimant added evidence when seeking relief from the Appeals Council in the form of a letter from a treating physician. *Fraley v. Colvin*, No. 3:14-cv-192, at *5 (W.D.N.C. Aug. 20, 2015). This Court held that remand was not required, in part, because the new evidence from the treating physician was not substantiated by his treatment records. *Id.*

The new evidence in question comes in the form of a Physical Residual Functional Capacity Questionnaire submitted by Dr. Greene, Plaintiff's treating physician. Dr. Greene indicates[1] that Plaintiff is diagnosed with COPD and fibromyalgia; her prognosis is fair; her symptoms include pain in her hip and that she fatigues easily; that she has pain in her back and hip. (Tr. 1542). When asked to identify clinical findings, he stated:



---

[1] The Questionnaire is not a model of penmanship and several words require interpretation.

15

which the Court finds as unreadable. (*Id.*). When asked to describe the treatment and response including any side effects that may have implications for working, Dr. Greene answered simply "anti[-]inflammatory meds." (*Id.*). He stated that her impairments are expected to last at least twelve months. (*Id.*).

Dr. Greene indicated that post-traumatic stress disorder, depression, and anxiety affect Plaintiff's physical condition. (Tr. 1453). He indicated that Plaintiff's experience of pain and other symptoms would frequently interfere with attention and concentration to perform even simple work tasks. (*Id.*). He further stated that Plaintiff is incapable of performing even low stress jobs, *id.*, but failed to specify the reasons for this conclusion even though the form asked him to explain why he so opined. (*Id.*).

Regarding Plaintiff's functional limitations, he stated that Plaintiff could walk one to two blocks without rest; could sit thirty minutes at one time; and that she could stand for thirty minutes. He further responded that she could sit less than two hours and stand/walk less than two hours in an eight-hour workday but that he was "not sure of this answer." (Tr. 1454). He further stated that Hicklin-Jones needed to walk for ten minutes every thirty minutes; that she would need to take unscheduled breaks;[2] that a cane was not required; that he did not know how much she could lift or carry; that he could not answer questions about the neck, twisting, bending, or climbing; that she does not have significant limitations regarding reaching, handling, or fingering; and that "most days are bad day[s]." (Tr. 1453-55).[3] He failed to answer a question about how many days Plaintiff would be absent for work. (Tr. 1455). Finally, he noted that she would be limited by anxiety, depression, and post-traumatic stress disorder. (Tr. 1456).

---

[2] He failed to answer the follow-up questions of how often he thought that these breaks would happen and how long his patient would need to rest before returning to work. (Tr. 1454).
[3] His treatment note of even date indicates that "I told her that many answers I could just not answer appropriately since that is not in my expertise." (Tr. 1458).

The Commissioner argues that this evidence is not material because the opinion is, at best, unreliable and inconsistent with his own notes. (Doc. 17, at 14).

Earlier visits recount her pulmonary issues and a high white blood cell counts which were largely resolved. (*See* Tr. 1484 – 1508). On November 15, 2011, Plaintiff reported that her breathing had improved with a decreasing dose of medication and that she had rectal bleeding that appeared to have resolved later. (Tr. 1482). He indicated that she was in no acute distress. (*Id.*). On November 29, 2011, Plaintiff was advised to cut down on smoking; that she had no obvious wheezing; that if she quits smoking, Greene could cut back on her pulmonary medications. (Tr. 1481). He also indicated that she was in no acute distress. (*Id.*). On December 29, 2011, Greene indicated that her pulmonary issues were stable but that she was bothered by constipation. (Tr. 1479). He indicated that he would reduce the amount of medication for her COPD. (*Id.*). On February 3, 2012, Greene followed up with Plaintiff after a recent hospitalization for atypical pneumonia. (Tr. 1477). Her symptoms were exacerbated by dust, but as shown below, have improved with the rest of pulmonary issues. (*Id.*). He also indicated that Plaintiff did not appear to be in any distress. (*Id.*). On March 5, 2012, Plaintiff was doing "fairly well" from a pulmonary standpoint and had the occasional cough which may have been exacerbated by a fan blowing up dust. (Tr. 1475). Greene indicated that she was in no acute distress. (*Id.*). On May 29, 2012, Greene noted that Plaintiff completely quit cigarettes; that her respiratory issues were better than when she smoked; but that she still has occasional cough and shortness of breath with exertion. (Tr. 1473). Greene further noted that Hicklin-Jones was in no acute distress. (*Id.*). On August 27, 2012, Greene recounted that chronic lung disease was stable; and that she indicated that she had intermittent pain in her right foot or ankle area but that she had a full range of motion, no localized tenderness, and that the peripheral pulses were intact. (Tr. 1471). On October 9, 2012,

Greene indicated that her chronic lung disease was stable and that medication appeared to be effective. (Tr. 1469). He also indicated that she was in no acute distress. (*Id.*). He also mentioned that she had lower quadrant pain. (*Id.*). On October 23, 2012, he saw her for left lower quadrant pain and thumb pain which exhibited tenderness but she had "fairly normal range of motion otherwise." (Tr. 1467). On November 6, 2012, Greene recounted her lower persistent abdominal pain, the presence of an ovarian cyst, and loose stools but that no other abnormalities were seen. (Tr. 1465). On January 7, 2013, he noted that she went to the emergency room for some chest pain and left arm and leg weakness, but that objective findings were unremarkable other than that she had a low attenuation left-sided thyroid nodule. (Tr. 1463). Other than numbness, she had no findings regarding physical capacity. (*Id.*). On April 23, 2013, he recounted that she told him that her left-sided back pain had gotten better since she went to the hospital; that she occasionally has some cough; and has some numbness and weakness in her left hand. (Tr. 1461). He also noted that "[s]he is not tender in her back. She is able to get up and move around without difficulty." (Tr. 1461). On the same date of the RFC Questionnaire Dr. Greene indicated that she was "[a] cooperative lady who has no difficulty walking, getting into the office setting." (Tr. 1458). On June 25, 2013, he made no findings that would support his RFC. (Tr. 1459).

As recounted above, Dr. Greene's RFC Questionnaire is at odds with his medical records. Particularly troubling about this Questionnaire is that Greene fails to explain how he comes to his conclusions despite being asked and the Court cannot divine how these conclusions were reached when viewing his records which recount that he largely treated Plaintiff for her pulmonary issues which remitted after she quit smoking and used medication. Several answers and his medical records indicate that even he is unsure of his answers on the Questionnaire. This is not the type of

evidence that can cause a reasonable possibility of different determination upon remand. If anything, the treatment records only corroborate the ALJ's findings that the COPD is in remission.

### D. Credibility

SSR 96-7 states that: "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered" or that "the allegations are (or are not) credible.'" The ALJ's decision in this case stated that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision.

(Tr. 27).

First, *Mascio* is not implicated here. This language, while arguably boilerplate, does not imply that the ALJ first determined Plaintiff's ability to work and then used it to determine her credibility. 780 F.3d at 639-40. The Court notes that the ALJ's credibility finding precedes his central finding that "[t]he objective evidence is consistent with the [RFC] and inconsistent with claimant's allegations of disability." (Tr. 27). The ALJ then recounted numerous reasons for questioning Plaintiff's credibility: (1) upon filing her application she had only recently been laid off for non-medical reasons; (2) she had worked at the job for three years despite her diagnoses of fibromyalgia and rheumatoid arthritis; (3) there is no indication that these conditions had worsened; (4) Dr. Huynh found no physical abnormalities at his consultative medical examination; (5) during said exam she ambulated without difficulty, got off and on the table without difficulty, and sat comfortably; (6) she was found to have normal neurological examination, full strength, and a normal range of motion; (7) a subsequent exam corroborated the normal range of motion

finding; (8) she was diagnosed with COPD but has improved with treatment; and (9) that she reported depression and anxiety but that a consultative examiner found that her memory was intact, she could understand and follow instructions, sustain attention, and could get along with others in a work setting. (Tr. 27-28).

Plaintiff argues that the ALJ only impliedly found her allegations regarding the effects of her fibromyalgia and COPD to be incredible; however, this argument is not well taken considering the ALJ's discussion as recounted above.[4] The ALJ was well within his authority to find the claimant's allegations of disabling pain inconsistent with the fact that she worked until the business shut down and that subsequent medical records do not reveal that her conditions have worsened. The above discussion also shows that the ALJ did not singularly focus on the objective evidence when considering her subjective allegations of pain, even though said information can certainly be used to evaluate her credibility. *See Hines v. Barnhardt*, 453 F.3d 539, 564-66 & n.3 (4th Cir. 2006).

Claimant's argument stating that the credibility analysis should have included a discussion of carpal tunnel syndrome is not well taken. The new records only show that it is "very mild" which equates with Greene's finding of numbness. (Tr. 1428). Further, it was not the ALJ's burden to produce evidence in support of her application for disability.

**IT IS, THEREFORE, ORDERED THAT**

(1) The Commissioner's Motion for Summary Judgment is **GRANTED**;

(2) The Plaintiff's Motion for Summary Judgment is **DENIED**; and

(3) The Commissioner's final decision is **AFFIRMED**.

[signature follows]

---

[4] Plaintiff's cursory citation to SSR 12-2p is not well taken. Plaintiff makes no cognizable argument in relation to SSR 12-2p that is separate and apart from the credibility argument she makes.

Signed: December 15, 2015

Richard L. Voorhees
United States District Judge